# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Joshua Eller | ) |
| | ) |
| and all others similarly situated; | ) CIVIL ACTION FILE NO.: _____ |
| | ) |
| v. | ) |
| | ) |
| KBR, Inc., | ) |
| | ) |
| Kellogg, Brown & Root LLC, and | ) |
| | ) |
| Halliburton Company | ) |

## COMPLAINT

1. Plaintiff Joshua Eller files this complaint on behalf of himself and all others similarly situated (hereinafter referred to as "Plaintiffs") to seek redress from the defense contractors named above ("Defendants"). Defendants promised the United States government that they would supply safe water for hygienic and recreational uses, safe food supplies and properly operate base incinerators to dispose of medical waste safely. Defendants utterly failed to perform their promised duties. Instead, Defendants intentionally and negligently exposed thousands of soldiers, contract employees and other persons to unsafe water, unsafe food, and contamination due to faulty waste disposal systems. Defendants acted egregiously merely to make more money for themselves. This action seeks compensatory and punitive damages against all Defendants.

## PARTIES

2. Plaintiff Joshua Eller is a citizen of the United States, residing at 1392 Revel Cove Drive, Conyers, Georgia 30094. Mr. Eller was deployed to Iraq to serve as a

Dockets.Justia.com

computer aided drafting technician from the February through November, 2006. He supported the 332nd Air Force battalion.

3. Plaintiffs John and Jane Does 1-1000 are the Class of persons serving in Iraq who have been exposed to contaminated food, contaminated water, and/or improperly operated incinerators, and who have suffered injuries as a result of their exposure. Plaintiffs 1-1000 may include U.S. military personnel, U.S. government contractors and third country nationals employed by the military or contractors. Unknown Plaintiffs 1-1000 share common questions of law and fact and are so numerous that joinder of all members of the class is impracticable.

4. Defendant KBR, Inc. is a publicly traded corporation with headquarters located at 601 Jefferson Street, Suite 3400, Houston, Texas 77002. Defendant KBR was incorporated in Delaware on March 21, 2006. Defendant KBR was a wholly owned subsidiary of the Halliburton Company until April, 2007. Defendant KBR acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant KBR."

5. Defendant Kellogg, Brown & Root LLC is a publicly traded corporation with headquarters located at 505 E. Huntland Dr., Suite 100 Austin, Texas. Defendant Kellogg Brown Root acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellog Brown Root."

6. Defendant Halliburton is a publicly traded corporation with corporate headquarters located at 5 Houston Center, 1401 McKinney, Suite 2400, Houston Texas 77010. Defendant Halliburton was formed and incorporated under the laws of Delaware.

Defendant Halliburton does business throughout the United States and the rest of the world. Defendant Halliburton acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Halliburton."

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332 (diversity jurisdiction); and 28 U.S.C. § 1367 (supplemental jurisdiction).

8. Venue is proper pursuant to 28 U.S.C. § 1391.

## CLASS ALLEGATIONS

9. This action should be certified as a class action pursuant to Fed. R. Civ.P. 23(b)(2), which permits the certification of a class when the defendants "have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole..." Fed.R.Civ.P. 23(b)(2).

10. This action should be certified as a class action pursuant to Fed.R.Civ.P. 23(b)(1)(A) which permits the certification of a class if the lack of a class could lead to inconsistent or varying adjudication with respect to individual members which would establish incompatible standards of conduct for the defendants.

11. This action should be certified as a class action pursuant to Fed.R.Civ.P. 23(b)(1)(B), which permits the certification of a class when adjudication with respect to an individual Plaintiff would, as a practical matter, be dispositive of the interests of the other putative Class Members.

12. This action should be certified as a class action pursuant to Fed.R.Civ.P. 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

13. This action should be certified as a class because Plaintiff satisfies all of the prerequisites to a class action set forth in the Fed.R.Civ.P.23(a). Specifically,

    (a) the class is so numerous that joinder of all member is impracticable;

    (b) there are questions of law common to the class;

    (c) there are questions of fact common to the class;

    (d) the claims of the named Plaintiff are typical of the claims of the class;

    (e) the representative party will fairly and adequately protect the interest of the class.

14. Counsel is experienced in bringing and defending class actions and will adequately represent the class interests.

15. There should be at least one class certified. The class should be defined as a Class which consists of persons who 1) have been deployed to Iraq as part of the U.S. military or as a U.S. government contractor or third country national serving the U.S. forces, 2) who were exposed to the actions of Defendants and 3) were injured as a result of this exposure. There are at least an estimated 100,000 individuals who were exposed to the actions of Defendants. There may be additional subclasses suitable for certification.

### DEFENDANTS PROVIDED CONTAMINATED WATER TO U.S. FORCES

16. Defendants are the main providers of bulk water used in dining, medical, personal hygiene and recreation facilities. KBR's Government and Infrastructure ("G&I") business unit provides program and project management logistics to the U.S. military operating in

Iraq. In August, 2006 KBR was awarded a $3.5 billion task order under the LogCap III contract, a government contract awarded in support of military operations in the Middle East. In 2006, Iraq related work contributed $4.7 billion to the consolidated revenues of KBR and KBR was further awarded $120 million in award fees during that year. Revenue from their operations in Iraq represented 45% of all KBR revenues in 2006.

17. U.S. military standards, including but not limited to TB MED 577, establish field water quality standards and water certification processes and define operational and oversight rules. KBR was contractually required to comply with these and other water safety standards. The standards provide detailed requirements for the sanitary control and quality surveillance of land-based field water support. All water used for drinking, cooking and medical facilities must be potable. Water used for laundry and personal hygiene, bathing, and cleaning may be non-potable but must meet certain minimum safety standards as outlined in TB MED 577.

18. KBR was required to monitor and maintain the quality of water it distributed to meet the established standards. KBR was required to inspect and maintain distribution and storage tanks, chlorinate water supplied and ensure proper levels of chlorine residual. The water distribution and point-of-use storage containers were an integral part of the water supply system and were required to be installed, operated and maintained in accordance with applicable Army regulations.

19. KBR failed to meet the applicable standards and supplied water which was contaminated, untreated, and unsafe. Water quality tests were not performed and disinfection residual levels were not monitored and maintained at point-of-use storage containers and water was not properly treated or chlorinated to ensure safety to users.

20. Senator Dorgan requested that the Department of Defense Inspector General review allegations that KBR supplied unsafe water to the U.S. forces in Iraq. The audit revealed that KBR failed to properly supply, maintain, and test the water it supplied to U.S. forces during the audited period. *See DoD Inspector General Report No. D-2008-060, attached as Exhibit 1.*

21. A report entitled *Report of Findings & Root Cause, Water Mission B4 Ar Ramadi*, prepared by Wil Granger, KBR's water quality manager for Iraq, dated May 13, 2005, indicates that no disinfection to non-potable water was occurring for water designated for showering purposes. "This caused an unknown population to be exposed to potentially harmful water for an undetermined amount of time." *See Report attached as Exhibit 2 at p. 3.*. The report confirms that "The deficiencies of the camp where the event occurred is not exclusive to that camp, meaning that countrywide, all camps suffer to some extent from all or some of the deficiencies noted." *Ex. 2 at 4.*

22. KBR failed to properly train its personnel in proper water operations, despite its acceptance of a contract to provide safe water to the U.S. force in Iraq. "Theatre wide there is no formalized training for anyone at any level in concerns to water operations." *Ex. 2 at 5.*

23. KBR relied on "semi-skilled" labor to maintain the water operations and paid them at the level of unskilled workers in the KBR compensation classification structure. *Ex. 2 at p. 6.*

24. KBR generated or retained little or no documentation regarding water safety issues, water inventories, chemistries, audits, safety standards, procedures or orders. "This lack of documentation shows a lack of oversight and understanding as to the

requirements necessary for the production, distribution, consumption, and uses of water; both potable and non-potable. Documentation is necessary to validate the quality of our services to prevent both liability and injury." *Ex. 2 at 6.*

25. Former KBR employees and water quality specialists Ben Carter and Ken May publicly admitted that KBR knowingly exposed troops and civilians to contaminated water from the Euphrates and Tigris Rivers. Ben Carter, a water quality specialist who worked for KBR at Junction City, testified that he tested water. He found the water to be polluted with sewage and other contaminates. He also found KBR was not chlorinating the water as required. Mr. Carter treated the water tanks serving KBR employees and told company managers the military should be alerted so they could treat their tanks as well. Mr. Carter was ordered by his KBR supervisor to concern himself only with the health and safety of KBR personnel. KBR was supposed to test the water three times daily to confirm safety but such testing never occurred.

26. Defendants provided water to fill the swimming pools located at Balad Air Force base. These swimming pools were used during recreation time for the U.S. forces. Defendants supplied unsafe water for the pools and failed to properly test or chlorinate the water, thereby exposing U.S Forces to unsafe water for swimming.

### DEFENDANTS SUPPLIED THE US FORCES WITH SPOILED, ROTTEN, AND CONTAMINATED FOOD

28. KBR was responsible for receiving, storing, transporting, preparing and serving food and ice to the U.S. Forces in Iraq.

29. Defendants knowingly and intentionally supplied to U.S. Forces and other individuals food that was expired, spoiled, rotten, or that may have been contaminated with shrapnel, or other materials.

30. Defendants knowingly and intentionally supplied and served food that was well past its expiration date, in some cases over a year past its expiration date. Even when it was called to the attention of the KBR food service managers that the food was expired, KBR still served the food to the U.S. forces.

31. Defendants failed to properly maintain refrigeration trucks that were needed to maintain a safe food supply. Defendants would allow refrigeration trucks to run out of fuel, thereby allowing food to spoil.

32. Defendants supplied and served chicken, beef and fish that was well past its expiration date to U.S. forces.

33. Defendants supplied and served dairy products and eggs well past their expiration dates.

34. Defendants failed to follow sanitation rules from the Military Preventative Medicine programs and other U.S. military standards.

35. KBR prevented their employees from speaking with government auditors and hid employees from auditors by moving them from bases when an audit was scheduled. Defendants failed to meet with auditors as required and left base or hid when an audit was scheduled. Any employees that spoke with auditors were sent to more dangerous locations in Iraq as punishment.

36. Defendants provided eggs that were unsafe to eat. Defendants' actions caused salmonella poisoning.

37. Defendant KBR was required to provide food according to their customs for the many third country nationals working to support the U.S. effort in Iraq. Defendant KBR

routinely failed to provide proper and safe food for these individuals and gave third country nationals leftover food out of garbage cans and boxes.

38. Defendant KBR charged the U.S. government for many more meals than were actually served and charged the U.S. government for food served to Defendant KBR's own employees.

39. Trucks that have been used as mortuary trucks are never permitted to carry any food supplies. Defendants ignored this rule, and shipped ice served to the U.S. forces in trucks that had been used to carry human remains and that still had traces of body fluids and putrefied remains in them when they were loaded with ice. This ice was served to U.S. forces.

**DEFENDANTS FAILED TO PROPERLY HANDLE AND INCINERATE WASTE**

40. Reasonable discovery will show that Defendants were required to properly handle and incinerate the medical wastes that arose on some or all of the U.S. bases or camps in Iraq.

41. Defendants failed to properly maintain and operate the incinerator designed to ensure the safe disposal of medical waste at Balad Air Force base, which operated a busy front- line military hospital.

42. Instead, Defendants merely dug an open air burn pit and burned in the open air hazardous medical waste and other waste not appropriate for open air burning.

43. On at least one occasion, Defendants were attempting to improperly dispose of medical waste at the open air burn pit by backing a truck full of medical waste up to the pit and emptying the contents onto the fire. The truck caught fire. Defendants' fraudulent actions were thereby discovered by the military.

44. Defendants burned medical waste that contained human body parts on the open air burn pit. Wild dogs in the area raided the burn pit and carried off human remains. The wild dogs could be seen roaming the base with body parts in their mouths, to the great distress of the U.S. forces.

45. Defendants illegally burned old lithium batteries on the open air burn pits, causing noxious and unsafe blue smoke to drift over the base.

## DEFENDANTS' ACTIONS CAUSED PLAINTIFF ELLER'S ILLNESS

46. Plaintiff Joshua Eller was deployed to Iraq in February, 2006 as part of the civilian force supporting the U.S. Air Force. During his ten months in Iraq he used the swimming pools, showering and hygiene stations and dining halls which were operated and supplied by Defendants.

47. In May, 2006, Plaintiff developed lesions on his skin, these lesions spread, filled with fluid and finally burst. The lesions wept fluid to such an extent that they had to be kept covered with gauze. After treatment with antibiotics given from the Air Force Clinic, the lesions scabbed over and healed. In August, 2006 the lesions returned and a similar course and treatment were experienced.

48. Plaintiff developed blisters on his feet beginning in August 2006 and continuing to the present time. Like the earlier lesions, the blisters swell, fill with fluid and eventually burst. The blisters make it very painful to walk and curtail most physical activity for a week. After Plaintiff's return to the United States, he continued to experience the blistering on his feet. The condition returns every three to four months and each flare up lasts approximately one week.

49. Plaintiff developed severe gastrointestinal problems while in Iraq. He experienced frequent vomiting, cramping and diarrhea while stationed at Balad Air Force Base. Since his return to the United States he continues to suffer from recurring severe stomach pain and gastrointestinal problems and continues to seek medical treatment and testing to determine the cause of his illness.

50. Plaintiff witnessed the open air burn pit in operation at Balad Air Force Base. On one occasion, he witnessed a wild dog running around base with a human arm in its mouth. The human arm had been dumped on the open air burn pit by KBR. Plaintiff continues to have severe nightmares caused by this incident and is now dependent on sleeping pills to help him rest without being tormented by this image. Plaintiff has been diagnosed with adjustment disorder as a result of his continuing nightmares.

## COUNT ONE: NEGLIGENCE

51. Paragraphs 1-50 are hereby incorporated in full.

52. Defendants owed a duty to provide water safe for swimming and hygienic purposes, to provide food safe for human consumption and to safely and properly incinerate medical and other waste.

53. Defendants negligently failed to provide safe water, safe food and ice, and to properly handle medical waste.

54. Plaintiffs suffered harm from exposure to unsafe water, unsafe and expired food, and to improperly incinerated waste.

55. Defendants negligence was the proximate cause of harm to all Plaintiffs.

## COUNT TWO: BATTERY

56. All allegations and facts in paragraphs 1-55 are hereby incorporated in full.

11

57.     Defendants supplied water contaminated with hazardous substances knowing that such water would come into contact with Plaintiffs and knowing that Plaintiffs would not consent to such contact. Defendants also contaminated the air by burning hazardous substances in an open air burn pit, creating a constant, heavy smoke and haze. Defendants knew that Plaintiffs would come into contact with the smoke from the illegal fires and that they would not consent to such contact.

58.     Plaintiffs did not consent to contact with contaminated water while using the hygiene facilities supplied for showering, shaving and brushing teeth or while swimming in the pools or to contact with heavy smoke and haze from the burn pit.

59.     Defendants' actions were unlawful acts and Defendants acted in willful disregard of Plaintiffs right to be free of exposure to hazardous substances.

## COUNT THREE: NUISANCE

60.     All allegations and facts in paragraphs 1-59 are hereby incorporated in full.

61.     Plaintiffs and all residents of U.S. bases in Iraq had the right to have water that met the applicable military standards, and food that was safe for consumption.

62.     Defendants substantially and unreasonably interfered with those rights when they knowingly failed to provide safe water in which to bathe and swim and safe food to consume.

63.     Plaintiffs had a public right to be free from irritating and hazardous smoke from an improperly operated open air burn pit and to be free of the hazards that arise when medical waste is burned on an open air burn pit.

64. Defendants substantially and unreasonably interfered with those rights when they improperly burned an open air burn pit constantly and improperly burned hazardous waste and medical waste from the nearby front line military hospital.

65. Plaintiffs suffered from injuries, both physical and emotional, due to Defendants egregious conduct in placing contaminated water into the swimming pools and the hygiene units. Plaintiffs suffered injuries from the illegal operation of the open air burn pit.

66. Defendants actions are the proximate cause of Plaintiffs' injuries.

## COUNT FOUR: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

67. All allegations and facts in paragraphs 1-66 are hereby incorporated in full.

68. Plaintiffs have been diagnosed with injuries as a result of Defendants' conduct in supplying unsafe food and water and in burning medical waste on an open air pit.

69. Plaintiffs have suffered from emotional distress due these injuries.

70. Defendants negligent conduct is the cause of the Plaintiffs' emotional distress.

## COUNT FIVE: OUTRAGE/ INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

71. All allegations and facts in paragraphs 1-70 are hereby incorporated in full.

72. Plaintiffs have suffered from extreme stress due to Defendants outrageous actions.

73. Defendants conduct was intentional and reckless.

74. Defendants' conduct in providing sewage water for the U.S. Forces to swim and bath in and taking millions of taxpayer dollars as payment was outrageous and intolerable and certainly offends generally accepted standards of decency and morality. Defendants' conduct in dumping medical waste in an open burn pit and allowing body parts to be

13

taken, carried and likely eaten by wild dogs was outrageous, intolerable and certainly offends generally accepted standards of decency and morality.

75. Defendants' conduct caused Plaintiffs' emotional distress. Defendants knew or had reason to know that their actions would create a risk of harm and they deliberately proceeded to act, or failed to act, in conscious disregard of that risk of harm.

76. Plaintiffs suffered severe emotional distress from learning they were bathing and brushing teeth with sewage water. Plaintiff Eller has suffered extreme emotional distress from witnessing human body parts being carried in the mouths of wild dogs. The severe emotional distress of the U.S forces who would witness such events was the primary risk created by Defendants' reckless conduct in allowing human body parts to be burned on an open air burn pit.

## COUNT SIX: STRICT PRODUCT LIABILITY

77. All allegations and facts in paragraphs 1-76 are hereby incorporated in full.

78. Under different contracts with the U.S. government, Defendants were responsible for supplying U.S. bases in Iraq with all manner of items designed to safeguard the Morale, Welfare, and Recreation of the U.S. Forces. Under such contracts, Defendants sold to the U.S. food, water and waste disposal services. Defendants handled these large government contracts in their regular course of business.

79. The water that Defendants sold the U.S. for use by the U.S. Forces in Iraq was unreasonably dangerous when used for swimming, bathing, brushing teeth and shaving. Since Defendants put contaminated water in swimming pools and the field hygiene units, it was reasonably anticipated that the water would be used in this manner.

14

80. Defendants did not give adequate warning of the danger of the water, even after they were confronted with its dangers by members of their own corporation.

81. Plaintiffs used the contaminated water in a reasonably anticipated manner.

82. The expired and spoiled food that Defendants served to the U.S. for the use by the U.S. Forces in Iraq was unreasonably dangerous when ingested.

83. Plaintiffs consumption of the food was reasonably anticipated by Defendants.

84. Plaintiffs were injured by their exposure to contaminated water and their ingestion of expired or spoiled food. Plaintiffs' injuries are a direct result of Defendants defective products.

## COUNT SEVEN: WILFULL AND WANTON CONDUCT

85. All allegations and facts in paragraphs 1-84 are hereby incorporated.

86. Defendants owed Plaintiffs a duty to provide safe water, food and medical waste disposal services. Defendants breached that duty and proximately and directly caused harm to Plaintiffs

87. Defendants were conscious of their conduct in failing to adequately supply safe water and food and medical waste disposal services.

88. Defendants were conscious from their knowledge of the surrounding circumstances and existing conditions that their conduct would naturally and probably result in injury to Plaintiffs.

89. Defendants demonstrated either a deliberate intent to harm Plaintiffs or an utter indifference and conscious disregard for the welfare of Plaintiffs.

## COUNT EIGHT: NEGLIGENT HIRING, TRAINING AND SUPERVISION

90. All allegations and facts in paragraphs 1-89 are hereby incorporated in full.

91. Defendants had a duty to properly train their personnel in water supply safety and military water standards and in proper testing, reporting and administrative procedures, and proper maintenance and oversight procedures.

92. Defendants failed, as reported by their own employee, to implement any of the required training of personnel.

93. Defendants wholesale failure to set up a water supply system that was adequately overseen, trained, maintained and policed was the direct and proximate cause of injury to Plaintiffs.

## COUNT NINE: BREACH OF DUTY TO WARN

94. All allegations and facts in paragraphs 1-93 are hereby incorporated in full.

95. Defendants had a duty to warn U.S. Forces when Defendants learned there were safety issues with the water supply, when they learned there were safety issues with the food supply and when they learned that the incinerator was not properly functioning.

96. Defendants failed to warn U.S. Forces of these issues and this failure was the direct and proximate cause of injury to Plaintiffs.

## JURY DEMAND

Plaintiffs request a Jury Trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

Award Plaintiffs monetary damages to compensate each Plaintiff for their physical injuries, emotional distress, fear of future disease, and need for continued medical treatment and monitoring;

Award Plaintiffs punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant misconduct and callous disregard and utter indifference to the welfare of Americans serving and working in Iraq who depend on Defendants supply of the basic necessities of life;

Award attorney's fees and costs to Plaintiffs for legal services provided in the pursuit of this suit; and,

Grant such additional and further relief as the Court deems just and proper.

Respectfully submitted,

By: */s/ Philip A. Werner*
Philip A. Werner
Texas State Bar No. 21190200

OF COUNSEL:

WERNER AYERS, L. L. P.
2000 West Loop South, Suite 1550
Houston, Texas 77027
(713) 626-2233
(713) 626-9708 (fax)

Susan L. Burke
Elizabeth M. Burke
BURKE O'NEIL LLC
1718 20th Street
Washington D.C. 20009
(215) 487-6596

ATTORNEYS FOR PLAINTIFF